NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRATEGIC TECHNOLOGIES, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | |
| v. | **OPINION** |
| MARC COOPER AND ELYCE COOPER, | Civil Action No. 04-3372 (DMC) |
| Defendant(s). | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on an appeal by Defendants-Appellants Marc and Elyce Cooper (the "Coopers") of a Bankruptcy Court Order on or about May 4, 2004, denying a motion seeking disqualification of United States Bankruptcy Judge Novalyn L. Winfield ("Judge Winfield") and Sills, Cummis, Epstein & Gross, P.C. (the "Sills Firm"), counsel for Trustee, Anthony R. Calascibetta (the "Trustee"). For the reasons set forth below, Judge Winfield's Opinion is affirmed.

I. BACKGROUND

A. The Bankruptcy Case

On July 18, 2002, Strategic Technologies, Inc. ("STI") filed a Chapter 11 petition. (Op. at 2). STI was engaged in the business of providing shipping related services, including auditing freight bills and collecting and transmitting funds to pay the freight bills. Id. Due to numerous

allegations of fraudulent conduct by Marc Cooper and various other officers and employees of STI, a Chapter 11 Trustee was appointed on July 23, 2002, and he immediately retained the Sills Firm.  Id.  After analyzing the business operations of STI and its prospects for reorganization, the Trustee recommended liquidation under the provisions of Chapter 7 of the Bankruptcy Code.  Id. The Court entered an order converting the Chapter 11 case to a Chapter 7 case on July 31, 2002, and the United States Trustee continued Mr. Calascibetta as the Chapter 7 Trustee.  Id.

The Trustee continued to investigate the business affairs of STI and determined that Marc Cooper, STI's president and sole shareholder, caused an estimated $87 million of customers' funds to be diverted from payment of customers' freight bills to payment of STI operating shortfalls and the personal use and enjoyment of the Coopers.  (Op. at 3).

In March, 2003, the Trustee filed an adversary proceeding against the Coopers to recover the allegedly diverted funds.  Id.  Negotiations between both sides resulted in a settlement agreement which was noticed to creditors pursuant to Fed. R. Bankr. Pro. 9019.  Id.  Due to several objections subsequently filed, a modified settlement agreement (the "Settlement Agreement") was approved by the Bankruptcy Court by Order dated July 11, 2003.  Id.

The Settlement Agreement has yet to be performed as a result of a different understanding between the parties regarding the terms.  Id.  The Coopers moved before the Bankruptcy Court for an order clarifying the July 11, 2003, Order, or declaring the Settlement Agreement void.  Id. The Trustee cross-moved to enforce the Settlement Agreement.  Id.  The Bankruptcy Court issued an oral decision and Order granting the Trustee's motion and denying the Cooper's motion on December 22, 2003.  Id.

A hearing was scheduled for December 22, 2003, to settle the form of the Order which

the parties could not agree on.  Id.  Also scheduled for that date was a hearing on the summary judgment motions in another STI adversary proceeding, Calascibetta v. Renaissance Village, Inc. (Op. at 4).

At the hearing of December 22, 2003, the Bankruptcy Court Judge informed the adversary Defendants that her current law clerk, Daniel Goldberg ("Mr. Goldberg"), was the spouse of a former law clerk, Lenore Goldberg ("Ms. Goldberg"), who was employed by the Sills Firm as an associate.  Id.  The Judge also advised the parties that Mr. Goldberg was not assisting the Court with STI matters, with one exception: Mr. Goldberg was given the names of three or four cases and was asked to obtain citations and provide photocopies in the Renaissance Village matter.  Id.  Mr. Goldberg did not perform any other service regarding this matter.  Id.  Counsel for Renaissance Village indicated that he had no concerns.  Id.  After requesting information from the Sills Firm and the Court, the Coopers moved to disqualify both the Sills Firm and the Judge Winfield.  Id.

Judge Winfield entered an order denying the motion to disqualify on May 4, 2004. (Opp'n Br. at 8).  The Coopers filed a Notice of Appeal from this Order on May 14, 2004.  Id.

    B.  The Law Clerks

Lenore Goldberg served as Judge Winfield's law clerk for approximately one year, from August 22, 2000, until August 28, 2001.  (Goldberg Aff. at ¶ 2.)  Upon completing her clerkship, Judge Winfield informed Ms. Goldberg that it was the policy of the Bankruptcy Court to exclude former clerks from appearing before the judge for whom they have clerked for one year from the date their clerkship ends.  (Goldberg Aff. at ¶ 4.)  Ms. Goldberg began working as an associate for the Sills Firm on September 10, 2001.  (Goldberg Aff. at ¶ 3.)

Daniel Goldberg, Ms. Goldberg's husband, applied for a clerkship in Judge Winfield's chambers in November, 2000. (Op. at 5). Judge Winfield interviewed Mr. Goldberg for the 2002-2003 clerkship in August of 2001. Id. Although the 2002-2003 clerkship was offered to another candidate, Judge Winfield extended an offer to Mr. Goldberg for the 2003-2004 clerkship year, which he accepted. Id.

Mr. Goldberg began working as a "swing clerk" for Bankruptcy Judges Steckroth, Stern and Winfield on July 7, 2003. (Op. at 5). A "swing clerk" is a temporary law clerk that rotates among judges with a heavy case-load on a monthly basis. Id. Mr. Goldberg worked as a swing clerk for Judge Winfield briefly, but not on any matter involving the Sills Firm. Id.

On August 18, 2003, Mr. Goldberg commenced the 2003-2004 clerkship with Judge Winfield. Id. Judge Winfield instructed Mr. Goldberg that as her clerk he was not to work on any matter involving the Sills Firm. Id. Her policy was: "You don't work on it, and we don't talk about it." (Op. at 5-6). Judge Winfield has no written policy for her chambers other than the Code of Conduct for United States Judges and "Ethics for Federal Judicial Law Clerks." (Op. at 5). Aside from the limited ministerial work on the Renaissance Village matter previously noted, Mr. Goldberg did not perform any work involving the Sills Firm, specifically none relating to the current STI bankruptcy litigation. (Op. at 6).

C. The Coopers' Disclosure Requests

On or about April 14, 2004, the Coopers requested a hearing to obtain more information through testimony by Mr. Goldberg, Ms. Goldberg, and the Sills Firm regarding Mr. Goldberg and his communication to parties in this litigation. Id. The Sills Firm contends that they have

complied with all requests for information and, furthermore, suggest that none of the information requested is necessary in deciding the disqualification matter.  (Op. at 7).

## II.  DISCUSSION

### A.  Appellate Jurisdiction and Standard of Review

The United States District Court has jurisdiction to hear the appeal of a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a) (1994).  On July 19, 2004, the Coopers filed a Notice of Appeal of the Bankruptcy Court's decision denying the motion for disqualification of Judge Winfield and the Sills Firm.  (Mov. Br. at 1).  The Coopers have also filed a Notice of Appeal pertaining to the enforcement of the Settlement Agreement on May 14, 2004, which has been stayed pending resolution of the disqualification matter.  Ibid.

A petition for a writ of mandamus is a proper means to seek review of a judge's refusal to recuse herself, and "[v]irtually every court of appeals has recognized the necessity and propriety of interlocutory review of disqualification issues on petitions for mandamus 'to ensure that judges do not adjudicate cases that they have no statutory power to hear.'"  Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 163 (3d. Cir. 1993) (*quoting* In re Sch. Asbestos Litig., 977 F.2d 764, 778 (3d Cir. 1992)).  However, "waiting until final appeal is an inadequate remedy for addressing the disqualification issue."  Alexander, 10 F.3d at 163.  In fact, "we do not rule out the use of interlocutory and final appeals to review disqualification decisions..." Sch. Asbestos Litig., 977 F.2d at 777-778.

Following the three-part test under 28 U.S.C. § 1292 (1976), "review of interlocutory orders should be granted where: 1) the appeal presents a controlling question of law; 2) over which there is substantial basis for difference of opinion, and 3) an immediate appeal may

-5-

materially advance the outcome of the case." In re Barbel, No. 399-0005, 01-221, 2004 WL 2203445 (D.V.I. 2004) (*quoting* In re Energy Insulation, Inc., 143 B.R. 490 (N.D.Ill. 1992)); See also Wintrop Stimson v. St. Johnsbudy Co., 186 B.R. 53, 55, (D.Vt. 1995).

The standard of review for the disqualification of Judge Winfield under 28 U.S.C. § 455(a) is a controlling question of law and has been a source of controversy between both parties in this case, thus satisfying the first two prongs. The issue's resolution will materially advance the outcome of the case by allowing it to run its course under Judge Winfield's Order. Conversely, it may also materially advance the case by remedying the issue through the assignment of a new Judge. Moreover, until the disqualification matter is resolved, there can be no advancement of the matter pertaining to the enforcement of the Settlement Agreement. Therefore, the third prong is satisfied under Section 1292.

The District Court may hear appeals from interlocutory orders and decrees of Bankruptcy Judges which are entered in cases and proceedings that are referred to Bankruptcy Judges under 28 U.S.C. § 157.  See 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8003.  Therefore, the request for disqualification of the Sills Firm and the request for additional discovery may be reviewed.

The District Court reviews matters of the Bankruptcy Court under the traditional *de novo* standard, but may only review findings of fact that are clearly erroneous. Fed. R. Bankr. P. 80013; In re Excalibur Auto. Corp., 859 F.2d 454, 457 (7th Cir. 1988).

    B. Judge Winfield's Disqualification

        1. Standard Under Section 455(a)

The Coopers move to disqualify Judge Winfield under 28 U.S.C. § 455(a), which provides:

>Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The test for recusal under § 455(a) was recently reiterated as "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington, 353 F.3d 211, 220 (3d Cir. 2003) (*citing* Edelstein v. Wilentz, 812 F.2d 128 (3d Cir. 1987)).

The test is actually a two-part inquiry that must determine: (1) whether there exists a conflict, and (2) whether that conflict irrevocably tainted the judge. In re Kensington Int'l Ltd., 368 F.3d 289, 303 (3d Cir. 2004) (hereafter referred to as "Kensington II"). The mere existence of a conflict is not enough to bias the judge. Id. The traditional "man on the street" standard is used where "the hypothetical reasonable person under § 455(a) must be someone outside the judicial system." Id. Therefore, when a conflict does exist, impartiality is only questioned when the reasonable person perceives that conflict to have tainted the judge. Id.

Canons 2 and 3C of the Code of Judicial Conduct for United States Judges require that a judge should avoid impropriety and the appearance of impropriety, and should disqualify herself when her impartiality is reasonably questioned. The requirements of all the Canons essentially embody the purpose of § 455 "to promote public confidence in the integrity of the judicial process." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988). In fact, similar to the Codes of Conduct, § 455(a) stresses that "[i]t is of no consequence that the judge is not *actually* biased... rather, the polestar is '[i]mpartiality and the *appearance of impartiality*.'" Kensington, 353 F.3d at 220 (*citing* Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir. 1992)) (*quoting* Lewis v. Curtis, 671 F.2d 779, 789 (3d Cir. 1982)). Hence, the disqualification issue

will be analyzed under the standard set forth in § 455(a).

### 2. The Bankruptcy Court's Screening Policy

The Coopers allege that Judge Winfield should be disqualified because she was irrevocably tainted by the marital relationship between Mr. Goldberg, her current clerk, and Ms. Goldberg, her former clerk.  The Coopers primarily rely on the reasoning of the Court in Kensington II, 368 F.3d 289, where a judge was disqualified from an asbestos-related Chapter 11 case because lawyers appointed as neutral advisors to the judge created a structural conflict of interest.  The advisors also served as advocates in a separate asbestos-related bankruptcy case, and this dual role irrevocably tainted the judge.  However, Kensington II is distinguished because the unique role of the advisors in that case gave rise to duties which remain distinct from the current matter.  The lawyers maintained wide-ranging responsibilities as advisors to the judge, including drafting legal opinions and participating in *ex parte* hearings.  Therefore, the advisors occupied a unique position and level of influence over the judge and also had duties to act as advocates for future asbestos claimants.  Kensington II, 368 F.3d at 304.

Mr. Goldberg did not occupy a similarly unique position in the STI matter.  Although, "[a] law clerk, by virtue of his position, is obviously privy to his Judge's thoughts in a way that parties cannot be," Mr. Goldberg's role was never one of an advisor to Judge Winfield.  Fredonia Broadcasting Corp. V. RCA Corp., 569 F.2d 251 (5th Cir. 1978).  Furthermore, he did not participate in this STI litigation in the least.  He did not draft an opinion.  He did not participate in any meetings with Judge Winfield.  "Mr. Goldberg has not reviewed pleadings, researched the law, or even performed a ministerial task except for the Renaissance Village matter."  (Op. at 9).

The relationship between Mr. Goldberg and Ms. Goldberg as husband and wife, and his

relationship to Judge Winfield as her clerk, alone, does not give rise to a conflict of interest which taints the Judge.  A clerk's mere presence in the chambers of a judge is not equal to the influence a lawyer asserts in an advisory role.  Although, an "almost irrebutable presumption" exists that a judge is tainted and must be disqualified where she "surrounds herself with individuals who may not be truly disinterested," the Court found in Kensinton II that "[the judge's] neutrality was seriously compromised by virtue of [the advisors'] *participation* in [the case]."  Kensington II, 368 F. 3d at 308.

In this case, information was never shared between law clerk and judge, unlike the exchange that occurred in Kensington II.  (Op. at 9).  The factual differences between that case and the present matter are clear since, in the former case, there was never any doubt that the individuals in question were working on the case and advising the judge.  The nature of the duties evident in the positions held in the two cases are distinct and should not be treated alike.

Furthermore, Canon 3F(2)(a)(iv)(B) of the Codes of Conduct for Judicial Employees provides proper guidance when a conflict does arise due to the relationship between a law clerk and his spouse.  The Canons dictate that a law clerk must be restricted from "perform[ing] official duties" in any matter in which he knows his spouse "is acting as a lawyer in the proceeding."  Code of Conduct for Jud. Employees Canon 3F(2)(a)(iv)(B) (1996).  The Bankruptcy Court followed the rules precisely, restricting Mr. Goldberg's capacity as a law clerk by limiting his duties in the STI litigation which involved his spouse.  (See Op. at 10-11).  There is not a scintilla of evidence that the present law clerk worked on this case other than an acknowledgment that he may have Sheppardized or looked up a couple of cases at the Judge's request, but thereafter took no part in the Judge's decision and no part in the matter itself.

Therefore, Judge Winfield and Mr. Goldberg comported themselves in a manner that was in accordance with the governing rules of professional conduct.

Since it is clear that there was no actual impropriety, the Coopers must rely on the contention that it was an "appearance of impropriety" that required recusal under the standard set forth in Kensington. In order to avoid the appearance of partiality, there must be specific action taken to assure that the taint of a conflict never reaches a judge, so that she may remain apart from its bias. Kensington II, 368 F.3d at 305. "A reasonable observer, understanding that certain issues were 'off limits,' would be concerned by the absence of any mechanism to police those limits." Id. From the beginning of his clerkship, Mr. Goldberg had been restricted from participating in any matter in which the Sills Firm was involved. (Op. at 10). The Bankruptcy Court had no formal written policy other than the Codes of Conduct, however Judge Winfield had the practice of addressing conflict issues when they arose. Her policy in this matter was clear and unequivocal: "You don't work on it, and we don't talk about it." (Op. at 5-6). The screening policy implemented to restrict Mr. Goldberg was not contrived or ambiguous and was no less official because it was oral. Thus, it acted as a policing mechanism to insulate Judge Winfield from any partiality.

The Kensington Court discussed "safeguards" used by the judge to maintain impartiality. In that case, the safeguards were dismissed because they were not sufficient to minimize the risks of bias where the judge simply welcomed all the parties to the *ex parte* meetings and stated that he was a veteran judge. Kensington II, 368 F.3d at 310. Judge Winfield's screening safeguard, on the other hand, "adequately minimized the risk." Id. The Judge's policy was clear in her mandate to restrict Mr. Goldberg from STI matters, and thus shielded her from any potential

conflicts that could rise with litigation.

The present facts do not support the Coopers' contention that a Judge who restricts her law clerk from a litigation in which his spouse is involved, creates the appearance of partiality by virtue of the clerk's position alone.  A reasonable person knowing the present circumstances would reasonably believe that Judge Winfield's conduct avoided the appearance of partiality.  In Hall v. SBA, 695 F.2d 175 (5th Cir. 1983), a Magistrate Judge's disqualification was required because the law clerk sat in court during the trial, took notes, and prepared bench memoranda after employment interviews began between the law clerk and Plaintiff's counsel.  "Whether or not the law clerk actually affected the magistrate's decision, her *continuing participation* with the magistrate [Judge] in a case in which her future employers were counsel gave rise to an appearance of partiality."  Hall, 695 F.2d at 179 (emphasis added).  There is no evidence of any participation by Mr. Goldberg in the current case before Judge Winfield.

The Hall Court considered precedent in Reddy v. Jones, 419 F. Supp. 1391 (W.D.N.C. 1976), *cert. denied*, 439 U.S. 839 (1978), where a judge was not disqualified because he had "[t]he unvaried custom... that if a law clerk accepts future employment with a law firm, he is immediately taken off all work... in cases being tried in th[e] court by his prospective employer."  Equally, Judge Winfield has this very custom regarding the issue of conflict in the current case.

Other Circuits are in agreement that the active participation of an individual is what gives rise to the conflict which may taint a judge.  For example, in U.S. v. Temple, 162 F.3d 279, 286, n.2 (4th Cir. 1998), disqualification was not required where a law clerk's spouse was a prosecutor in the case before the Court because the judge "took pains" to prohibit the clerk from working on the case.  Similarly, Hunt v. American Bank & Trust, 783 F.2d 1011, 1015-1016 (11th Cir. 1986),

-11-

held that recusal was not necessary where the law clerk's future employer was a prosecutor in a case before the Court "so long as the clerk refrains from participating in cases involving the firm in question." A screening policy as implemented by Judge Winfield thus shields her from the appearance of partiality.

There is also nothing to sustain the Coopers' assertion that Ms. Goldberg's presence before Judge Winfield as a party to the litigation also creates the appearance of partiality. Ms. Goldberg was advised of the Bankruptcy Court's policy of excluding former clerks from appearing before the judge for whom they had clerked for one year from the time of their clerkship. (Goldberg Aff. at ¶ 4.) The Coopers argue that Ms. Goldberg violated this policy because she had worked on the case one month before the time restriction elapsed, although she had not actually appeared in court before Judge Winfield. (Opp'n Br. at 21-22). While we may endlessly debate the meaning of "appear," it is ultimately irrelevant since the issue turns on the clerk's participation in the case.

In <u>Fredonia Broadcasting Corp. V. RCA Corp.</u>, 569 F.2d 251 (5th Cir. 1978), *rehearing denied*, 572 F.2d 320, *cert. denied*, 439 U.S. 859 (1979), Defendant's counsel sought to remove the judge because a former clerk was representing the Plaintiff. The Court focused on the fact that the former clerk was involved in a case in which he participated during his clerkship. <u>Fredonia</u>, 569 F.2d at 256. As a clerk, Ms. Goldberg never participated in the STI case because the case was not filed until almost a year after her clerkship ended. (Op. at 10-11).

Mr. Goldberg was screened from the STI litigation, and Ms. Goldberg never participated in the case as a clerk. Therefore, pursuant to the reasonable person standard set forth in Section 455(a), "a man on the street," knowing that Mr. Goldberg was isolated from a matter which

involved his wife, would believe that Judge Winfield's conduct prevented any appearance of impropriety.

### C. Sills Firm's Disqualification

The Coopers also seek to disqualify the Sills Firm as counsel due to conflicts of interest arising as a result of Ms. Goldberg's marriage to Judge Winfield's law clerk. The Coopers argue that this relationship creates an appearance of impropriety under Rule 1.7(c) of the Rules of Professional Conduct. The Coopers further contend that Ms. Goldberg's representation of the Trustee is adverse to her husband's service as a law clerk and violates R.P.C. 1.8(i). R.P.C. 1.7(c) and R.P.C. 1.8(i) were both deleted as of January 1, 2004.[1] The Coopers also rely on the current Rules under R.P.C. 1.7 and R.P.C. 8.4(d), which prohibit materially limited representation and prejudicial conduct, respectively. The Sills Firm should not be disqualified because under the current circumstances any conflicts of interest were prevented.

The Coopers argue that disqualification is proper under former Rule 1.7(c) in that the marriage of a former law clerk to a current law clerk creates the appearance of impropriety. The Bankruptcy Court's policy of screening Mr. Goldberg from the STI bankruptcy litigation, regardless of his very limited work on the Renaissance Village matter, was sufficient to avoid the appearance of partiality or impropriety. The Sills Firm gained no insight or advantage from the spousal relationship because Mr. Goldberg did not participate in the current STI litigation.

The Coopers' further assert that Ms. Goldberg's representation of the Trustee is "materially limited" because of responsibilities to her husband. See R.P.C. 1.7(a)(2). Rule 1.7

---

[1] R.P.C. 1.8(j) was re-designated as R.P.C. 1.8(i) when the amendments were made. Therefore, R.P.C. 1.8(i) currently exists in the Rule as different text. R.P.C. 1.7(c) no longer exists.

indicates a conflict of interest when lawyers representing adverse parties have a familial relationship to a third party, which may interfere with both loyalty to the client and professional judgment. There is no evidence that Ms. Goldberg has not provided competent, loyal and diligent counsel to the Trustee. Thus, representation of her client has not been limited in any material way. See R.P.C. 1.7(b)(2). The Trustee knew of this marital relationship and did not demand disqualification or further disclosure. Moreover, since Ms. Goldberg is not currently employed at the Sills Firm, the concern over limitations in her ability to represent the Trustee no longer exist.

The Coopers also rely on Opinion 418 of the Advisory Committee on Professional Ethics to support the Sills Firm's disqualification. Opinion 418 held that an attorney should not appear before a Municipal Court for which his wife served as the deputy court clerk. The Committee focused on the fact that a deputy clerk does not occupy a merely ministerial position, and performs important functions such as "completing jurats on complaints, signing arrest warrants, and fixing bail." A law clerk does not enjoy such control and influence in court matters because their terms are limited and their duties more circumscribed. Therefore, the current situation is distinguished from Opinion 418 due to the apparent distinctions between the duties of a law clerk and that of a court clerk.

The Coopers further contend that non-disclosure of the spousal relationship between Ms. Goldberg and Mr. Goldberg was improper because the relationship created adverse interests in the current matter. Former R.P.C. 1.8(i) prohibits the representation of clients with adverse interests by lawyers related to one another as spouses unless there is consent by the client. The aforementioned Rule does not apply here. There is no adverse third party in the given situation

-14-

because Mr. Goldberg is not a lawyer participating in the litigation, rather he is the Judge's law clerk. Furthermore, even if Mr. Goldberg could be considered a party to the litigation, he is not participating in the case in any capacity because he was screened from all matters involving the Sills Firm. Therefore, no adverse interests arise between the Sills Firm and Mr. Goldberg.

The Coopers also allege a violation of R.P.C. 8.4(d), which proscribes engagement of conduct that is prejudicial to the administration of justice. The Coopers, however, do not point to any specific instance, but argue that there *may* have been such inappropriate conduct. R.P.C. 8.4(d) does not address the appearance of impropriety and thus the Coopers' speculation of possible misconduct is inadequate to sustain a basis under the Rule. It is also important to note that due to Mr. Goldberg's isolation from the case, any discussion between him and Ms. Goldberg on that matter could not have been imparted to the Bankruptcy Court. Similarly, the screening policy also prevented any confidential information to be shared between Judge Winfield and her clerk.

### D. Discovery Requests

The Coopers seek discovery from the Bankruptcy Court and the Sills Firm in order to establish the "extent of communications between Judge Winfield, Ms. Goldberg and the Sills Firm regarding Mr. Goldberg." (Op. at 6). The Coopers contend that the present clerk may have somehow influenced Judge Winfield, which she flatly denies. (Op. at 4-6). Additional information is not necessary to determine the motion for disqualification. Judge Winfield specifically addressed the issue by discussing her law clerk's lack of participation in the current matter. "Mr. Goldberg has not reviewed pleadings, researched the law, or even performed a ministerial task except for the Renaissance Village matter." (Op. at 9). The disqualification

issue turns on Mr. Goldberg's participation in the bankruptcy litigation and whether Judge Winfield's conduct was sufficient to avoid the appearance of partiality. Kensington II, 368 F.3d at 308; Hall, 695 F.2d at 179. Therefore, it is not proper, under these circumstances, to allow the Coopers to pursue the matter further by hearings or deposition, particularly where the allegations are so speculative and improbable.

### III.  CONCLUSION

For the foregoing reasons, the screening policy implemented by the Bankruptcy Court, which isolated Judge Winfield's law clerk from participating in litigation involving his wife, a former law clerk, is sufficient to avoid any appearance of impropriety or partiality that the relationships may have created. Judge Winfield's Opinion and Order denying the motion for disqualification of the Judge and the Sills Firm and requesting additional discovery is hereby **affirmed**.

 S/ Dennis M. Cavanaugh
 DENNIS M. CAVANAUGH, U.S.D.J.

Date:  April 28, 2005

Orig:  Clerk's Office
cc:    All Counsel of Record
       The Honorable Mark Falk, U.S.M.J.
       File